Filed 8/29/24  Merfeld v. Bayer Corp. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ESSURE PRODUCT CASES | |
| JULIE MERFELD,<br>    Plaintiff and Appellant,<br>v.<br>BAYER CORPORATION et al.,<br>    Defendants and<br>    Respondents. | A168164<br><br>(JCCP No. 4887) |

In December 2018, plaintiff Julie Merfeld sued defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Essure, Inc., and Bayer Healthcare Pharmaceuticals Inc. (collectively, Bayer) for injuries allegedly related to being implanted with Essure, a birth control device.  The trial court granted Bayer's motion for summary judgment — it determined Merfeld had notice of her claims no later than February 2016, and they were thus barred by the two-year statute of limitation.  It also denied her request for leave to amend her complaint and motion for a new trial.  Merfeld appeals.  Finding no error, we affirm.

**BACKGROUND**

Essure is "a permanent female birth control implanted into the patient's fallopian tubes through a disposable delivery system."  (*In re Essure Product Cases* (2023) 98 Cal.App.5th 228, 232.)  In February 2015, a law firm

filed a public "Citizen Petition" with the United States Food and Drug Administration (FDA) alleging Bayer failed to advise the FDA of " 'several adverse reactions' " to Essure and " 'actively concealed the same.' " Seven months later, the FDA convened a public meeting of the Obstetrics and Gynecology Devices Panel of the Medical Devices Advisory Committee to discuss the device's safety and effectiveness. The meeting was highly publicized, and a transcript was posted on the FDA's website.

Litigation ensued and — in October 2016 — the trial court coordinated "approximately 29,000 plaintiffs' claims against Bayer" in Judicial Council Coordination Proceeding (JCCP) No. 4887. After demurrers and a motion for summary adjudication were resolved, one theory of liability remained: Bayer's failure to report adverse reactions to the FDA caused plaintiffs' doctors to be inadequately warned of Essure's risks and, in turn, resulted in plaintiffs' injuries.

Pursuant to a case management order in the JCCP, plaintiffs prepared master and short form complaints. The master complaint contained causes of action for negligence, strict product liability, concealment, negligent misrepresentation, fraud/intentional misrepresentation, breach of express warranty, manufacturing defect, and loss of consortium. The short form complaint directed plaintiffs to "select[] and indicate[] by checking off the appropriate spaces, those claims that are specific to [their] case. Where certain claims require additional pleading or case specific facts and individual information, Plaintiff(s) shall add and include them herein." New plaintiffs had to file a short form if they wished to sue with the intention of coordination in the JCCP.

In December 2018, Merfeld initiated a new case — not already part of the JCCP — by filing a short form complaint. She alleged she was an Iowa

2

resident and was implanted with Essure in April 2010 in that state. She checked the spaces for negligence, strict product liability, concealment, and loss of consortium. She also alleged Bayer's "misconduct and fraudulent concealment of the relevant facts deprived [her] and her physicians of vital information essential to the pursuit of these claims." She further alleged that, due to her reliance on Bayer's "misrepresentations and omissions," she "could not reasonably have known or become aware of facts that would lead a reasonable, prudent person to make an inquiry to discover [Bayer's] tortious conduct." Finally, she alleged Bayer's conduct "tolls any relevant statute of limitations" and asserted her "suit is filed well within the applicable statutory limitations period."

In November 2022, Bayer moved for summary judgment on the basis that Merfeld's claims were time-barred under Iowa and California law. Bayer argued that, in either state, a two-year statute of limitation applies to her claims. (Iowa Code § 614.1(2) [injuries to person or reputation]; Code Civ. Proc., § 335.1 [personal injury]; undesignated statutory references are to this code.) Further, Bayer argued Merfeld's claims began to run no later than February 2016 — when she had the device removed — more than two years before she filed her complaint. Merfeld opposed the motion.

In February 2023, the trial court granted the motion for summary judgment and denied Merfeld leave to amend her complaint to allege a new claim. She filed a motion for a new trial, which the court denied.

## DISCUSSION

Merfeld argues the trial court erred by concluding her claims were barred by the statute of limitation and by denying her leave to amend her complaint. We disagree.

3

Summary judgment shall be granted when no triable issue exists as to any material fact and "the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) For example, a defendant may demonstrate it has a complete defense to a cause of action. (§ 437c, subd. (p)(2); *Aguilar*, at p. 849.) A defendant moving for summary judgment based on a statute of limitation must show the time to bring the claim has expired. (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 316.) "Summary judgment is proper where the undisputed material facts demonstrate a claim is time-barred." (*Bennett v. Ohio National Life Assurance Corp.* (2023) 92 Cal.App.5th 723, 728.) We independently review an order granting summary judgment. (*County of Santa Clara*, at p. 316.)

We apply Iowa law — where Essure was prescribed and implanted — in analyzing whether these claims are time-barred.[1] (*United Pacific-Reliance Ins. Co. v. DiDomenico* (1985) 173 Cal.App.3d 673, 676 [claim "accrues 'when the wrongful act is done and the obligation or the liability arises' "].) In *Buechel v. Five Star Quality Care, Inc.* (Iowa 2008) 745 N.W.2d 732 (*Buechel*), the Iowa Supreme Court explained the limitation period for a product liability claim resulting in personal injury is set forth in Iowa Code section 614.1(2), and "such claims must be brought within two years of the accrual of the cause of action." (*Buechel*, at p. 736.) Accrual occurs when "a plaintiff discovers or in the exercise of reasonable care should have discovered 'all the elements of the action.' [Citation.] This latter concept— 'should have discovered'—is commonly referred to as inquiry notice." (*Ibid.*) One is put on inquiry notice when they gain "sufficient knowledge of facts

---

[1] Neither party appears to disagree that Iowa law governs the statute of limitation analysis.

that would put that person on notice of the existence of a problem or potential problem." (*Ibid.*)  At that point, "a person is charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation," and "a duty to investigate" arises.  (*Ibid.*)

Here, undisputed facts demonstrate Merfeld was put on inquiry notice by February 2016.  She began experiencing "injuries and medical conditions" after Essure was implanted.  In January and February 2016, she suspected the injuries were caused by the device.  In December 2015 or January 2016, she spoke on the phone with a nurse in her doctor's office and — while on the call — conducted a Google search for " 'side effects of Essure,' " finding a web page listing alleged side effects.  She recalled experiencing daily " '50 of the 100 and some side effects' " listed.  After her Google search, she felt " 'a great relief to find out what [her alleged injuries] could be attributed to.' "  In January 2016, she joined the "Essure Problems" Facebook group, which "further confirmed her belief" that the device caused her symptoms.  The same month — either due to the group or her Google searches — she learned of lawsuits involving Essure and filed a complaint with the FDA concerning the device.  In February 2016, she posted on Facebook regarding an "Essure Problems" press release and an article concerning FDA meetings regarding Essure.  That same month, she contacted her doctor to discuss her experience with the device, ailments she believed were attributable to it, and " 'possible removal.' "  Despite her doctor's opinion that her symptoms were consistent with perimenopause, Merfeld had the device removed — on February 7, 2016 — believing it was causing her ailments.  Almost all her symptoms "went away within minutes to weeks of her Essure removal."

The undisputed material facts establish under Iowa law that Merfeld was on inquiry notice of her claims — and thus her cause of action

accrued — no later than February 2016. (*Buechel*, *supra*, 745 N.W.2d at p. 736.) By that point, she had gained "sufficient knowledge of facts" and was "on notice of the existence of a problem or potential problem." (*Ibid.*) At a minimum, once she underwent major surgery to remove the "permanent . . . birth control" device (*In re Essure Product Cases*, *supra*, 98 Cal.App.5th at p. 232) — thereafter experiencing a nearly immediate and total cessation of her symptoms — the clock began to run on her cause of action. (*Buechel*, at p. 736.) That a doctor told Merfeld her symptoms were consistent with perimenopause does not alter our conclusion. (*Franzen v. Deere & Co.* (Iowa 1985) 377 N.W.2d 660, 662 ["duty to investigate does not depend on exact knowledge of the nature of the problem that caused the injury"]; *Buechel*, at pp. 737–738 [being told of alternative potential cause of injury did not alter accrual analysis].)

In urging us to reach a different conclusion, Merfeld argues the trial court erred by relying on *Buechel* because the Iowa Supreme Court " 'changed course' " concerning its accrual rule in *Rathje v. Mercy Hospital* (Iowa 2008) 745 N.W.2d 443 (*Rathje*).[2] She fails to persuade. In that case — interpreting Iowa Code section 614.1(9) — the court adopted a new approach concerning the accrual of medical malpractice causes of action. (*Rathje*, at p. 463.) Hence, that limitation period "begins to run only when the injured party's actual or imputed knowledge of the injury *and its cause* reasonably suggest an investigation is warranted." (*Id.* at pp. 461–462, italics added.)

---

[2] Merfeld repeatedly makes legal and factual assertions without citation to authority or the record. (Cal. Rules of Court, rule 8.204(a)(1)(B), (C).) We will not search the record or make arguments for a party and may treat unsupported arguments as waived. (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620.)

First, *Rathje* was decided two weeks *before Buechel*, so it's hard to imagine how the court could change course from a decision that had not yet been issued. Second, *Rathje* and *Rock v. Warhank* (Iowa 2008) 757 N.W.2d 670 — another case on which Merfeld relies — involved medical malpractice claims and interpreted a limitation period other than the one — Iowa Code section 614.1(2) — that governs causes of action like those in this case. Third, even after those cases were decided, the Iowa Supreme Court continued to explain that, "once a plaintiff learns information that would alert a reasonable person of the need to investigate, the plaintiff 'is on inquiry notice of all facts that would have been disclosed by a reasonably diligent investigation.' " (*Skadburg v. Gately* (Iowa 2018) 911 N.W.2d 786, 794 [legal malpractice cause of action].) "The duty to investigate includes determining the exact cause of the injury." (*Ibid.*)

Finally, we agree with Bayer that — even if *Rathje* does apply — the undisputed evidence establishes Merfeld's causes of action still accrued no later than February 2016. Again, undisputed facts establish Merfeld knew or should have known of her injuries no later than February 2016. She had experienced "medical conditions" since Essure was implanted in 2010, and by February 2016, she was daily experiencing approximately 50 symptoms. Undisputed facts *also* establish — despite the opinion of Merfeld's doctor that her symptoms were consistent with perimenopause — Merfeld's "actual or imputed knowledge" of the cause of her injuries "reasonably suggest[ed] an investigation [was] warranted." (*Rathje, supra*, 745 N.W.2d at pp. 461–462; *Franzen v. Deere & Co., supra*, 377 N.W.2d at p. 662.) For example, no later than February 2016, Merfeld believed the device was the cause of her injuries; her research indicated her 50 symptoms were consistent with Essure's reported side effects; she learned of other lawsuits involving Essure;

7

she joined a Facebook group called "Essure Problems"; she filed a complaint with the FDA concerning the device; she elected to undergo major surgery to remove it *despite* her doctor's opinion that her symptoms might have a different cause; and she experienced nearly immediate and total relief of her symptoms once it was removed. Having "knowledge of the 'critical facts' concerning . . . her injury and its cause, [Merfeld was] charged with the duty to investigate promptly and present any claim for relief." (*Rathje*, at p. 462; *Skadburg v. Gately*, *supra*, 911 N.W.2d at p. 794.)

Merfeld next argues she was unaware of the nature of some of her injuries until years after she had Essure removed. For example, she indicates she was diagnosed with "generalized arthritis" in July 2019 and learned in January 2022 she had a "very high allergic sensitivity to the metals contained in Essure." *Rathje* precludes Merfeld's effort to use a later injury as the basis for accrual date. (*Rathje*, *supra*, 745 N.W.2d at p. 458.) Iowa law "does not allow the splitting of a cause of action, and any effort to do so to avoid the commencement of the statute of limitations would be inconsistent with the purpose of cutting off stale claims." (*Ibid*.) Merfeld's causes of action accrued in February 2016, even if she later suffered additional injuries. (*Ibid*.)

Merfeld alternatively argues her causes of action should survive because they "fall within" Iowa's 15-year statute of repose. (Iowa Code § 614.1(2A)(a) [product liability causes of action resulting in personal injury "shall not be commenced more than fifteen years after the product" was first purchased or installed].) This misunderstands the purpose of — and difference between — a statute of limitation and a statute of repose. The former runs once a cause of action has accrued; the latter " 'terminates any right of action after a specified time has elapsed, regardless of whether or not

8

there has as yet been an injury.' " (*Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.* (Iowa 1993) 507 N.W.2d 405, 408.)  In other words, "a statute of limitations affects only the remedy, not the right, [citation], whereas a statute of repose affects the right itself, extinguishing existing rights or preventing rights from arising." (*Albrecht v. General Motors Corp.* (Iowa 2002) 648 N.W.2d 87, 91.)  Because we conclude Merfeld's causes of action accrued in February 2016, she had until February 2018 to file suit, even if time remained under the statute of repose.[3]

After granting summary judgment, the trial court denied Merfeld leave to amend her complaint to allege a breach of express warranty.  She contends this was error.  We disagree.  "Although leave to amend should be liberally granted, the trial court has discretion to deny it when a party unreasonably delays making the request." (*Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 224.)  "Unreasonable delay may be found where . . . the proposed amendment is based on facts previously known to the plaintiff.  [Citation.]  'It would be patently unfair to allow plaintiffs to defeat [the] summary judgment motion by allowing them to present a "moving target" unbounded by the pleadings.' " (*Ibid.*)  The master and short form complaints both identified the breach of express warranty cause of action, but Merfeld did not assert the claim when she filed her short form in December 2018.  On this record, the court did not abuse its discretion by concluding

---

[3] We do not address Merfeld's consortium cause of action, which she only addresses for the first time in her reply brief. (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894–895, fn. 10 [courts generally do not consider arguments raised for the first time in a reply brief].)  Likewise, any challenge to the ruling regarding her concealment cause of action is deemed forfeited for failure to provide reasoned argument or citations to authority. (*L.O. v. Kilrain, supra*, 96 Cal.App.5th at p. 620.)

there was an "unwarranted 5 year delay in seeking leave to amend after the filing [of Merfeld's] complaint."

In sum, we conclude the undisputed material facts establish Merfeld's causes of action are time-barred under Iowa law. (*Buechel, supra,* 745 N.W.2d at p. 736; *Bennett v. Ohio National Life Assurance Corp., supra,* 92 Cal.App.5th at p. 728.) And the trial court's denial of leave to amend her complaint was not an abuse of discretion. (*Champlin/GEI Wind Holdings, LLC v. Avery, supra,* 92 Cal.App.5th at p. 224.)

## DISPOSITION

The judgment is affirmed. Bayer is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278 (a).)

10

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
FUJISAKI, Acting P. J.


_____
PETROU, J.


A168164; *Merfeld v. Bayer Corp. et al.*

11