Virgilia GIVENS and Raymond Givens, Plaintiffs,

v.

WAL–MART STORES, INC. AND AS-SOCIATES' HEALTH AND WEL-FARE PLAN and Administrative Committee of the Wal–Mart Store's, Inc. Associates' Health and Welfare Plan, Defendants.

No. 8:03 CV 22.

United States District Court, D. Nebraska.

March 30, 2004.

Barbara K. Medbery, Hauptman, O'Brien Law Firm, Omaha, NE, for plaintiffs.

Christopher A. Hedican and Heidi A. Guttau–Fox, Baird, Holm Law Firm, Omaha, NE, for defendants.

## MEMORANDUM AND ORDER

SHANAHAN, District Judge.

This matter is before the court on Filing No. 20, the Defendants' "Amended Motion for Summary Judgment." For the reasons cited herein, the court grants the motion for summary judgment.

## I. FACTS

On or about March 6, 2000, Plaintiff Virgilia Givens was involved in an accident with a non-party tortfeasor. Virgilia Givens received medical treatment for the injuries she sustained in the accident at various hospitals and from various health care professionals, who in turn billed Virgilia Givens for these services. Virgilia Givens presented claims to the Wal–Mart Associates Health and Welfare Plan (the "Plan"), which is a self-funded entity under the Employee Retirement Income Security Act, 29 U.S.C.A. § 1001 *et seq.* ("ERISA"). After informing Givens of the Plan's right to subrogation, the Plan honored the claims and paid Virgilia Givens' medical bills in the amount of $91,312.18. (Filing No. 22, Ex. 5, ¶¶ 12–13.) Virgilia

and Raymond Givens, subsequently, reached a settlement with the tortfeasor's insurance company regarding the accident, whereby the insurance company paid its policy limits of $100,000.00.

On January 23, 2003, the Plaintiffs filed a "Petition for Declaratory Judgment" (Filing No. 1), and deposited with the clerk of this court the $100,000.00 settlement check. In response to the Plaintiffs' lawsuit, the Administrative Committee of the Wal–Mart Associates Health and Welfare Plan ("the Administrative Committee"), pursuant to ERISA 29 U.S.C. § 1132(a)(2) and (a)(3), filed a counterclaim against the Plaintiffs for equitable relief and damages to enforce the Plan's subrogation and reimbursement interest in the settlement proceeds that the Givens received from the insurance company.

The Plan provides that it has the right to be reimbursed from the proceeds of any settlement the Givens received for the injuries incurred and for which the Plan paid the benefits. Specifically the Plan provides:

The Plan has the right to 1) reduce or deny benefits otherwise payable by the Plan and 2) recover or subrogate 100 percent of the benefits paid or to be paid by the Plan on your behalf and/or your dependents to the extent of any and all of the following payments:

- Any judgment, settlement or any payment made or to be made, because of the accident, including but not limited to other insurance.

- Any auto or recreational vehicle insurance coverage or benefits including, but not limited to, uninsured/underinsured motorist coverage.

- Business and homeowners medical and/or liability insurance coverage or payments.

- Attorney's fees.

Cooperation required

The Plan requires covered persons or their representatives to cooperate in order to guarantee reimbursement to the Plan from third party benefits. Failure to comply with this request will entitle the Plan to withhold benefits due to covered persons under the Plan Document. Covered persons or their representatives may not do anything to hinder reimbursement of overpayment to the Plan after you have accepted benefits.

All attorney's fees and court costs are the responsibility of the participant, not the Plan.

These rights apply regardless of whether such payments are designated as payment for, but not limited to:

- Pain and suffering;
- Medical benefits;
- Other specified damages; or
- Whether the participant has been made whole (i.e. fully compensated for his/her injuries).

NOTES:

The Plan has first priority with respect to its right to reduction, reimbursement and subrogation.

The Plan's section regarding the right to reduction, reimbursement, and subrogation applies to all persons covered by the Plan.

(Ex. 2, Counterclaim ¶ 9; Ex. 3, 2000 SPD at p. D19 & D20; and Ex. 5, Herbaugh Aff.)

Pursuant to the Plan, the Defendants contend that the Plan is entitled to $91,312.18. The Givens refuse to reimburse the Plan $91,312.18.

## II. ANALYSIS

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Harder v. ACandS*, 179 F.3d 609, 612 (8th Cir.1999). "In making this determination, the function of the court is not to weigh evidence and make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely, to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Hedges v. Poletis*, 177 F.3d 1071, 1074 (8th Cir.1999). The court views the evidence in the light most favorable to the nonmoving party, *see Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992), and gives the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *See Moore v. Webster*, 932 F.2d 1229, 1230–31 (8th Cir.1991). The court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir.1997) (*quoting Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). The moving party "bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law." *Shelter Insurance Companies v. Hildreth*, 255 F.3d 921, 924 (8th Cir.2001).

■ One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses and the rule should be interpreted in a way that allows it to accomplish this purpose. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Summary judgment procedure is properly regarded not as a

disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990) (*quoting Celotex,* 477 U.S at 327, 106 S.Ct. 2548).

## B. Constructive Trust

In 2002, the United States Supreme Court decided *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), which altered the relevant ERISA remedial landscape. In this court's previous Order of August 20, 2003, the court held that *Great–West* clearly implies that ERISA plans might successfully seek a constructive trust or equitable lien pursuant to § 502(a)(3). (Filing No. 19 at 6–8.) The court additionally determined that the fact that the contested funds are not technically in the possession of the principal obligors, the Plaintiffs, but, rather, are in the hands of the court's registry does not preclude the court's imposition of a constructive trust on the monies. (*Id.* at 8.)

According to the plain terms of the Plan, the Plan has "the right to ... recover or subrogate 100 percent of the benefits paid or to be paid by the Plan on your behalf ... to the extent of any and all of the following payments: Any judgment, settlement or any payment made or to be made because of an accident, including but not limited to other insurance." (Filing No. 13, Ex. 3 at D19.) Additionally, the Plan provides that it "has first priority with respect to its right to reduction, reimbursement and subrogation." (*Id.* at D20.)

In its August 20, 2003 Order, the court noted that the Defendants' subrogation/reimbursement right may be altered by an interested party in this lawsuit, namely, Syndicated Office Systems ("SOS"). SOS filed a notice in this case claiming a lien in the principal amount of $21,078.67 for medical, hospital, and nursing services rendered to Virgilia Givens at St. Joseph Hospital, Omaha, Nebraska for injuries resulting from Virgilia Givens' accident. (Filing No. 16.)

However, following the terms of a plan document, the Eighth Circuit has held that a benefit plan was entitled to first dollar recovery from a settlement over the other lien holders because the plan document was reasonably construed to entitle the Plan to first dollar recovery. *Waller v. Hormel Foods Corp.,* 120 F.3d 138, 139 (8th Cir.1997). Moreover, "ERISA preempts any state law that would otherwise override the subrogation provision in a self-insured plan." *Id.* The court finds the Plan is clearly entitled to first dollar recovery, and Nebraska law is irrelevant to such a determination. Accordingly, the Plan is entitled to full reimbursement from the settlement proceeds and any other lien holders have no right superior to the Plan.

If the Givens were to receive the $100,000.00, they would receive a windfall in obvious derogation of the Plan's subrogation interest. In the court's view, the imposition of a constructive trust is warranted and is the type of appropriate equitable relief contemplated by § 502(a)(3) and *Great–West.* The funds are specifically traceable to the Plaintiffs' settlement with the tortfeasor's insurance company, and the funds were placed in the court's registry by the Plaintiffs. The majority of the funds belong in good conscience to the Defendants.

After review and consideration, the court finds that the Defendants' request for a constructive trust is appropriate equitable relief under the circumstances, and furthermore, the court concludes the Defendants are entitled to judgment on the merits. The court imposes a constructive

trust on $91,312.18 of the $100,000.00 that is currently being held by the court. Finally, the court notes that given the procedural posture of this case, the court's granting of the Defendants' motion for summary judgment disposes of the Defendants' counterclaims and at the same time disposes of the Plaintiffs' claim for declaratory judgment.

## C. Interest and Attorney Fees

■ The district court has discretion to award attorney fees in ERISA actions. *See* 29 U.S.C. § 1132(g) ("... the court in its discretion may allow a reasonable attorney's fee and costs of action to either party"). Prior to the year 2002, the Eighth Circuit held that a plan participant who prevails in a suit to enforce her rights under ERISA "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344, 1356 (8th Cir. 1980) (internal quotations and citation omitted). However, the Eighth Circuit recently overruled *Landro*. *See Martin v. Ark. Blue Cross and Blue Shield*, 299 F.3d 966 (8th Cir.2002) (en banc). Accordingly, in this circuit, there is no longer a presumption in favor of awarding attorney fees to prevailing plaintiffs in ERISA cases. *Id.*

In determining whether to award attorney fees in an ERISA case, the *Martin* court pronounced that the district court must consider the following factors:

(1) the degree of culpability or bad faith which can be assigned to the opposing party, (2) its ability to pay, (3) the potential for deterring others in similar circumstances, (4) whether the moving party sought to benefit all plan participants or beneficiaries or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the parties' positions.

*Id.* at n. 4 (citing *Lawrence v. Westerhaus*, 749 F.2d 494, 495–96 (8th Cir.1984)). The Eighth Circuit cautioned the district courts against a "mechanical application" of these *Westerhaus* factors; rather, "the district courts should use the factors and other relevant considerations as general guidelines for determining when a fee is appropriate." *Id.* at 972.

■ Notably, the court does not find any bad faith on the part of the Givens. Moreover, the Givens' ability to pay is limited insofar as they owe other medical providers. Applying these factors, the court does not find that an award of attorney fees is warranted.

■ ERISA does not expressly provide for prejudgment interest. However, prejudgment interest awards are permitted under 29 U.S.C. § 1132(a)(3)(B) (providing for "other appropriate equitable relief"). *See also Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1218 (8th Cir.1981). Nevertheless, the court declines to award any interest to the Defendants.

## III. CONCLUSION

THEREFORE, IT IS ORDERED:

(1) That Filing No. 20, the motion for summary judgment filed by the Administrative Committee of the Wal–Mart Associates Health and Welfare Plan, is granted;

(2) That the court imposes a constructive trust on $91,312.18 of the settlement proceeds that were deposited into the court's registry;

(3) That with respect to the $100,000.00 that the Plaintiffs placed into this court's registry, the court will direct the Clerk of the Court to deliver **$91,312.18** to Baird, Holm, McEachen, Pedersen, Hamann & Strasheim LLP on behalf of and in the trust of the Administrative Committee of the Wal–Mart Stores Inc.'s Associates' Health and Welfare Plan; the court will

also direct the Clerk of the Court to deliver the remaining $8,687.82 to Hauptman, O'Brien, Wolf & Lathrop P.C. on behalf of and in the trust of Plaintiffs, Virgilia and Raymond Givens; and

(4) That pursuant to Fed.R.Civ.P. 58, a separate Judgment will be filed on this date in accordance with this Memorandum and Order; and

(5) That this case is terminated.