# IN THE SUPREME COURT OF IOWA

No. 07–1752

Filed June 12, 2009

ST. PAUL'S EVANGELICAL
LUTHERAN CHURCH,

    Appellant,

vs.

CITY OF WEBSTER CITY, IOWA,

    Appellee.

---

Appeal from the Iowa District Court for Hamilton County, William J. Pattinson, Judge.

Appellant challenges district court's judgment notwithstanding the verdict denying its claim for damages resulting from the negligent reconnection of its sewer line. **REVERSED.**

Justin T. Deppe of Deppe Law Office, Jewel, for appellant.

Stephen G. Kersten of Kersten Brownlee Hendricks L.L.P., Fort Dodge, for appellee.

**STREIT**, **Justice**.

Some mistakes cannot stay buried. In 1978, during Webster City's water main installation project, a city contractor severed and then negligently reconnected St. Paul's Evangelical Lutheran Church's gravity-flow sewer line. Twenty-seven years later, sewage backed up into the church. St. Paul's brought a suit against the City to recover damages. The jury found in favor of St. Paul's, determining the water main installation project was not an "improvement to real property" under Iowa Code section 614.1(11) (2003). The district court granted the City's motion for judgment notwithstanding the verdict. St. Paul's appealed. Because the negligent reconnection of St. Paul's sewer line was not an "improvement to real property," the statute of repose, Iowa Code section 614.1(11), does not bar St. Paul's claim. We reverse.

## I.  Background Facts and Proceedings.

St. Paul's Evangelical Lutheran Church (St. Paul's) was built in 1953 in Webster City. The construction included a gravity-flow sewer connection to the city's sanitary sewer line. In 1978, the City of Webster City (the City) began a multi-million dollar project to upgrade its public water main system. During the installation of a water main on St. Paul's property, the City's contractor severed St. Paul's sewer line because it was on the same plane as the water main. In reconnecting the line, the contractor used a five- or six-foot piece of corrugated tubing (instead of cast iron pipe or clay tile), which was the wrong material, and re-routed the line around the water main. The change in material and the way the line was reconnected interfered with the gravity flow of the sewer line. Cutting and reconnecting the sewer line was not part of the improvements being made by the City, i.e., it was not a project to improve the sewer connection. In June 2005, sewage backed up into St.

Paul's as a result of the faulty reconnection. St. Paul's incurred more than $30,000 in damages.

In December 2005, St. Paul's filed a petition, claiming the City negligently cut and repaired its sewer line during the water main installation project in 1978. The City filed a motion to dismiss, asserting Iowa Code section 614.1(11), a fifteen-year statute of repose for improvements to real property, bars recovery. The motion was denied. Later, the City filed a motion for summary judgment on the same ground, which was also denied. The case proceeded to trial in March 2007. Before the case was submitted to the jury, St. Paul's objected to special verdict form question 3, which stated, "Was the City's water main installation project, as it pertains to this case, an 'improvement to real property,'" and requested that the question instead read, "Do you find . . . that the negligent severing and reconnection of the plaintiff's . . . sewer line . . . was an improvement to real property?" The original question was presented to the jury. The jury found the City negligent, that the City's negligence was the proximate cause of St. Paul's damages, and that the City's water main installation project was not an improvement to real property. The City filed a motion for judgment notwithstanding the verdict. The district court granted the motion, stating "the water main installation constitutes an improvement and the Church's damages flowed from one defect in that improvement" and thus the claim was barred by the statute of repose set forth in Iowa Code section 614.1(11). St. Paul's appealed.

## II. Scope of Review.

We review a district court's ruling on a motion for judgment notwithstanding the verdict for correction of errors at law. *Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 761 (Iowa 2009). "We inquire whether

substantial evidence exists to support each element of the plaintiff's claim, justifying submission of the case to the jury." *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 391 (Iowa 2001). We view the evidence in a light most favorable to the nonmoving party. *Id.*

### III. Merits.

Iowa Code section 614.1(11) is a statute of repose that bars a claimant from bringing "an action arising out of the unsafe or defective condition of an improvement to real property . . . more than fifteen years after the date on which occurred the act . . . [that] cause[d] . . . the injury . . . ." Thus, regardless of when an injury occurs, this statute of repose terminates any right of action fifteen years after the date of the improvement. If the statute applies, St. Paul's claim is barred since the reconnection of St. Paul's sewer line occurred in 1978, twenty-seven years before sewage backed up into the church and this action was commenced.

We have defined an improvement to real property to mean "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Krull v. Thermogas Co.*, 522 N.W.2d 607, 611 (Iowa 1994) (quoting *Webster's Third New International Dictionary* 1138 (1993)); *see also Jarnagin v. Fisher Controls Int'l, Inc.*, 573 N.W.2d 34, 36 (Iowa 1997).

The parties do not dispute that the water main installation project was an improvement or that the City's contractor negligently reconnected St. Paul's sewer line. The parties also agree that cutting and reconnecting St. Paul's sewer line was not an original part of the improvement project, but that the damage to, and negligent repair of, the

sewer line clearly occurred during, and as a consequence of, the water main project. The City argues that work on St. Paul's sewer line should be considered part of the water main improvement project because cutting St. Paul's sewer line would have not been done but for the water main installation project. St. Paul's argues that the reconnection of its sewer line was not an improvement, but rather a repair (resulting from the water main project) that improved neither the function nor the value of the sewer line. The question is whether we should evaluate the reconnection of St. Paul's sewer line as an independent "improvement" or as a necessary part of the water main improvement project under the statute of repose.

In the judgment notwithstanding the verdict ruling, the district court characterized the reconnection of St. Paul's sewer line as a "defect" in the water main improvement project. As the district court stated:

> The record is clear in the present case that the City's contractor bifurcated the Church's sewer line because it fell on the same plane as the new water pipe. As such, it would be a mistake to view the severing and negligent reconnection of the two ends of the sewer pipe ends as being just an ordinary repair. Instead, the retrofit of the Church's sewer line was a collateral step in and a consequence of the new water main's installation. Further, and because of the faulty retrofit, the water main improvement project was defective at that time and at that location. It was because of that defect that the Church eventually incurred its damages.

In its decision, the district court relied on a Minnesota case, *State Farm Fire & Casualty v. Aquila Inc.*, 718 N.W.2d 879 (Minn. 2006). Although the district court found the case persuasive, we do not. In *Aquila*, during the installation of a new gas pipeline in a mobile home park, a section of pipe was mistakenly pushed through an existing sewer line unbeknownst to anyone. *Aquila*, 718 N.W.2d at 882. Twelve years later, the mobile home park hired a repair man to unclog sewer drains

that were blocked by tree roots. *Id.* The repair man used a trap-and-drain auger, which struck and ruptured the intersecting gas line, causing gas to escape through the sewer lines into homes. *Id.* The gas accumulated and exploded, damaging several homes in the mobile home park. *Id.* The Supreme Court of Minnesota was asked to determine whether the installation of the gas pipeline was an improvement to real property. *Id.* at 884. The plaintiffs were seeking damages from the ruptured *gas* line, not the *sewer* line, and the court did not address whether the damage to the sewer line resulting from the new gas line was an improvement to real property. *Id.* Concluding the installation of the gas pipeline, in and of itself, was an improvement to real property, the court determined the Minnesota statute of repose barred the claim. *Id.* at 885.

In our case, the key issue is whether we should evaluate the negligent reconnection of the sewer line as its own independent improvement to real property or whether it was part of the water main project. The court in *Aquila* only addressed the limited issue of whether the new pipeline was an improvement (and not whether the damage to the sewer line was an improvement) because the damage arose from the improper location of the gas pipeline. *Id.* at 884. In contrast, here, the water main itself was not related to the sewer backup and resulting damage. Thus, the only thing connecting these cases is that they both involve sewer lines.

Granting the City's motion for judgment notwithstanding the verdict, the district court determined the faulty reconnection of St. Paul's sewer line was a part of the overall improvement project. We disagree. The record indicates the reconnection of St. Paul's sewer line was not part of the project to upgrade the water main system in Webster City and

that it would have been possible to complete the water main project without touching St. Paul's sewer line. Richard Seiser, a building official and inspector employed by Webster City for over forty-one years and a licensed plumber, stated there was no need to cut and reconnect the sewer line because configuring the water main to go up and over or underneath the existing sewer line would not have interfered with the water flow. He did admit, however, that cutting the sewer line was easier than putting a bend in the water main. He also stated that, once cut, reconnecting the sewer line to go under (and not over) the water main would have been the proper methodology. The record indicates the negligent reconnection of St. Paul's sewer line was not part of the project to improve the City's water main. Thus we should evaluate whether the reconnection of the sewer line (and not the water main project) is an improvement to real property under the statute of repose and our case law.

The issue here is whether the changes made to the sewer line as a result of installation of the new water line qualify as an improvement to real property under Iowa's statute of repose. Severing and reconnecting the sewer line does not meet the definition of "improvement to real property" as set forth in our case law: "[1] a permanent addition to or betterment of real property [2] that enhances its capital value and [3] that involves the expenditure of labor or money and [4] is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Krull*, 522 N.W.2d at 611. Replacing the original, rigid clay tile pipe with flexible, corrugated tubing, and re-routing the sewer line around the water main only satisfies two of the four requirements. First, to be an improvement, the project or product installed must be either "a permanent addition to or betterment of real property." *Id.* As

the sewer line was located beneath the ground and covered over by dirt and concrete after the City reconnected the line, the reconnection was undeniably "a permanent addition to" real property. In addition, reconnecting the sewer line did "involve[] the expenditure of labor [and] money," as the plumbers employed by the City did spend time (and in all probability were paid money) reconnecting and re-routing St. Paul's sewer line. *Id.*

However, the City's work on the sewer line does not meet the other two requirements. The severing and reconnection neither enhances St. Paul's capital value nor was it "designed to make the property more useful or valuable." *Id.* The work on the sewer line was not necessary to improve the function or quality of the sewer line, (but rather so that the water main could pass on an uninterrupted trajectory). Therefore, these changes did not enhance the sewer's value or usefulness and were not meant to benefit St. Paul's in any way. Before this change in 1978, St. Paul's had a functioning gravity-flow sewer line.

Lastly, an improvement to real property is distinguished from an ordinary repair. *Id.* The work on St. Paul's sewer line is better characterized as an ordinary repair. A perfectly good, functioning sewer line was in place before the City began its water main improvement project. During the course of the project, the sewer line was severed and had to be repaired. The work on the sewer line was not to improve it, but rather to repair damage resulting from the water main project.

The severing and reconnecting of St. Paul's sewer line was not an improvement to real property and, therefore, the statute of repose, Iowa Code section 614.1(11), does not bar St. Paul's claim for damages. We reverse the district court's judgment notwithstanding the verdict.

**IV. Conclusion.**

Although the water main project was an improvement to real property, St. Paul's damages did not arise from an "unsafe or defective condition" of the water main. St. Paul's damages were caused by a defective condition in the sewer line, but the work on St. Paul's sewer line was not an "improvement to real property." Therefore, the statute of repose, Iowa Code section 614.1(11), does not bar St. Paul's claim.

**REVERSED.**